### Lattie F. Coor v. Ina F. Coor

[580 A.2d 500]

No. 88-502

Present: **Allen, C.J., Peck, Gibson and Dooley, JJ.**

Opinion Filed August 10, 1990

*Douglas C. Pierson* and *Michael J. Gannon* of *Pierson, Affolter & Wadhams,* Burlington, for Plaintiff-Appellee.

*Peter F. Langrock* and *Deborah L. Markowitz* of *Langrock Sperry Parker & Wool,* Burlington, for Defendant-Appellant.

**Gibson, J.** Defendant Ina F. Coor appeals the maintenance provision of an order granting a divorce to plaintiff Lattie F. Coor, Jr. We affirm.

Plaintiff and defendant were married in 1964, a year after they met while pursuing advanced degrees at Washington University in St. Louis, Missouri. Both parties eventually received doctoral degrees and taught in their respective fields at various universities. Plaintiff held several administrative posts before becoming President of the University of Vermont in 1976, while defendant held several teaching positions during the marriage. At the time of their divorce, defendant was an Assistant Professor in the Department of Psychiatry at the University of Vermont, where her husband served as President. The children were ages twelve, sixteen, and twenty-three at that time.

Shortly before a contested hearing was held on the issues of property division and maintenance, the parties signed an agreement by which plaintiff assumed primary legal responsibility and shared physical responsibility for the minor children. Following a two-day hearing, the court awarded defendant (1) approximately $478,000 of the $844,000 in marital assets; and (2) $500 per month in maintenance, to be increased to $1,000 per month in 1992, $2,000 per month in 1995, and $3,000 per month

in the year 2000, figures to be adjusted for inflation. On appeal, defendant contends that the court abused its discretion by awarding defendant insufficient maintenance, and that the provision of the court's order terminating plaintiff's maintenance payments upon defendant's remarriage or cohabitation is contrary to Vermont law and against public policy.*

Defendant argues that the trial court abused its discretion by not ordering a larger maintenance award because (1) she needs a significantly greater amount to maintain the standard of living established during the marriage; (2) plaintiff is capable of paying significantly more without adversely affecting his standard of living; (3) the trial court relied too heavily on the fact that no child support was to be awarded and that defendant received a greater portion of the marital property while plaintiff was assigned a greater portion of the parties' debts. Upon review of the record, we conclude that the court did not abuse its discretion in making its maintenance award.

■ Under 15 V.S.A. § 752(a), the court may order maintenance payments if the spouse seeking maintenance "(1) lacks sufficient income, property, or both, including property apportioned [by the judgment order], to provide for . . . her reasonable needs, and (2) is unable to support . . . herself through appropriate employment at the standard of living established during the marriage or is the custodian of a child of the parties." Among the factors the court must consider are the financial resources of the party seeking maintenance, the property apportioned to the party, the party's ability to meet his or her needs independently, the reasonable needs of both parties, and the standard of living established during the marriage. See § 752(b). In fashioning the instant maintenance award, the court took into account, among other things, its property distribution award, defendant's future earning capacity, the parties' joint and individual debts, plaintiff's ability to pay, and the

---

* Initially, defendant also argued that the court abused its discretion by refusing to consider a University of Vermont reserve fund set aside for plaintiff as a marital asset subject to division. While the appeal was pending, however, the parties stipulated to a withdrawal of this claim of error.

standard of living established during the marriage. Upon review of the record and the court's award, we find no abuse of discretion and conclude that defendant has failed to meet her burden of showing that there is no reasonable basis to support the award. See *Johnson v. Johnson*, 155 Vt. 36, 41, 580 A.2d 503, 506 (1990); *Quesnel v. Quesnel*, 150 Vt. 149, 151–52, 549 A.2d 644, 646 (1988).

Defendant cites *McCrea v. McCrea*, 150 Vt. 204, 206–07, 552 A.2d 392, 394 (1988), for the proposition that the term "reasonable needs" in § 752(a) is to be determined in light of the standard of living established during the marriage. We reaffirm this interpretation, but conclude that, keeping in mind the standard of living enjoyed by the parties during the marriage, defendant's reasonable needs were met by the instant award.

■ Defendant also contends that the court abused its discretion by ordering that maintenance payments shall cease upon her remarriage or cohabitation. We disagree. It is within the court's discretion to order termination of maintenance payments should the spouse receiving maintenance remarry or cohabitate. See, e.g., *Johnson*, 155 Vt. at 42, 580 A.2d at 507; *Jacobs v. Jacobs*, 507 A.2d 596, 601 (Me. 1986). If the spouse receiving maintenance does remarry, but the anticipated increased financial security does not materialize, he or she may seek an amendment of the order terminating maintenance upon remarriage. 15 V.S.A. § 758.

■ The cases cited by defendant in support of her argument are not on point. In those cases, the original maintenance award did not stipulate that payments would cease upon the remarriage of the spouse receiving maintenance; rather, the paying spouse sought termination of the payments after the receiving spouse had remarried. The courts held that remarriage does not automatically justify a termination of maintenance payments. See, e.g., *In re Marriage of Bettiol*, 92 Or. App. 587, 588, 759 P.2d 322, 322 (1988). We agree that, in such situations, the party seeking termination of an obligation to pay maintenance must show that the remarriage of his or her ex-spouse constitutes a real, substantial and unanticipated change in circum-

stances. See § 758. Nevertheless, this conclusion does not preclude the trial court, under appropriate circumstances, from ordering in the initial decree that maintenance be terminated upon the remarriage of the party receiving the award.

■ The court did not abuse its discretion by making such an order under the present circumstances. Despite defendant's contentions to the contrary, the record does not show that she made repeated sacrifices of her own career to further that of her husband. Thus, this case differs significantly from *Klein v. Klein*, 150 Vt. 466, 473–74, 555 A.2d 382, 386–87 (1988), where we held, as a matter of law, that a spouse without a college education and with limited work experience, who for eighteen years had dedicated her life to raising the children and supporting her husband in the development of his law practice, was entitled to an award of maintenance. Because the compensatory aspect of maintenance noted in *Klein* is not prominent here, the court was not precluded from terminating the maintenance payments upon defendant's remarriage, as suggested by defendant. Cf. *Reiss v. Reiss*, 205 N.J. Super. 41, 47, 500 A.2d 24, 27 (1985) (where award of reimbursement alimony was made to compensate wife for contribution of her earnings to husband during husband's professional training, alimony was not terminable upon wife's remarriage).

*Affirmed.*