## Elizabeth Theise v. Jerome Theise

[674 A.2d 789]

No. 93-395

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed January 26, 1996

*Peter Langrock* and *William B. Miller, Jr.*, of *Langrock Sperry & Wool*, Middlebury, for Plaintiff-Appellee.

*Eugene Rakow* and *Gregg M. Meyer* of *Biederman & Rakow, P.C.*, Rutland, for Defendant-Appellant.

**Johnson, J.** Both husband and wife appeal the maintenance provisions of the family court's divorce order. We strike the provision calling for a lump-sum maintenance payment from the proceeds of the husband's life insurance policy in the event he predeceases the wife; in all other respects, the order is affirmed.

The parties were married nineteen years and had two daughters, who were eighteen and fourteen years old at the time of the final amended divorce order. The wife was a homemaker throughout the marriage; she was considering renewing her teaching certification or going back to school to become a physical therapist. The husband is involved in the construction and sale of luxury homes; his average annual income over the seven years before the final divorce hearing was approximately $67,000. Before the final hearing, the parties stipulated that (1) the wife would keep two unencumbered Vermont properties worth at least $325,000, plus another $20,000 in various accounts and personal property; (2) the husband would keep all New York properties, his business assets and properties, and his personal accounts, worth altogether approximately $1,300,000; (3) the wife would have physical responsibility for the older daughter for the few months remaining before she reached her majority, while the husband would have physical responsibility, and waive child support, for the younger daughter, a developmentally disabled child who will most likely require care beyond her majority; and (4) the court would determine the appropriate maintenance award.

The court approved the parties' stipulation and ordered the husband to pay the wife temporary and permanent "maintenance" in the amount of $324,000 unless terminated sooner by the wife's death, with payments of $2000 per month for one year, $1000 per month for the next four years, and $500 per month thereafter, notwithstanding the wife's cohabitation or remarriage. The court also ordered the husband to name the wife, to the extent of maintenance payments due her, as the beneficiary on an existing "key man" life insurance policy in which one of the husband's corporations was the beneficiary. This

provision awarded the wife a lump-sum "maintenance" payment from the proceeds of the policy in the event the husband predeceased her.

■ The husband first argues that the court erred by awarding the wife permanent maintenance when the evidence showed that she had sufficient income and property to provide for her reasonable needs as established during the marriage. In her cross-appeal, the wife argues that the court's maintenance award was an abuse of discretion, given the great disparity in the property division agreed to by the parties. Upon review of the record, we conclude that the court did not abuse its discretion regarding the monthly amounts and duration of its maintenance award. See *Delozier v. Delozier*, 161 Vt. 377, 381, 640 A.2d 55, 57 (1994) (family court has broad discretion in determining amount and duration of maintenance; court's award will be set aside only when there is no reasonable basis to support it).

■ We reject the husband's argument that the wife failed to make a threshold showing that she required maintenance to meet her reasonable needs and to maintain the standard of living established in the marriage. As we have stated before, "The longer the marriage, the more closely reasonable needs should be measured by the standard of living established during the marriage." *Id.* at 382-83, 640 A.2d at 58. The trial court adequately considered the relevant statutory factors in determining that, notwithstanding the potential income available to the wife from the sale of one of the Vermont properties, rehabilitative and permanent maintenance was appropriate. Regarding the wife's argument, we cannot conclude that the award was an abuse of discretion, given all the circumstances of the case, including the parties' financial needs and responsibilities as well as the nature and status of the assets awarded to each of them. As the court explained, most of the husband's assets were tied up in speculative businesses that were doing poorly, while the wife's assets were unencumbered and risk-free.

■ The husband also argues that the court erred by requiring him to secure post-mortem maintenance payments by naming the wife as beneficiary on his life insurance policy to the extent of the maintenance award. We agree that our recent case law precludes such a provision. In *Justis v. Rist*, 159 Vt. 240, 244, 617 A.2d 148, 150 (1992), we held that the family court has "no authority to order maintenance to continue beyond the life of the obligor spouse unless the parties have agreed otherwise." We extended this holding to life insurance policies in *Narwid v. Narwid*, 160 Vt. 636, 638, 641 A.2d 85,

87 (1993) (mem.), where we struck a court order requiring the obligor spouse to purchase and maintain a life insurance policy for the recipient spouse's sole benefit for as long as maintenance payments were owed. We stated that because the recipient spouse would realize benefits from the policy only upon the death of the obligor spouse, the benefits would "function as a form of continued maintenance to which [the recipient spouse] will be no longer entitled." *Id.*; see *Clapp v. Clapp*, 163 Vt. 15, 24, 653 A.2d 72, 78 (1994) ("We have rejected a requirement that one spouse purchase life insurance to ensure income to the other spouse after the death of the insured.").

Here, the family court expressly stated that the provision was intended to protect and preserve the wife's maintenance award should the husband predecease her. The family court is not authorized to accomplish such a purpose either directly or indirectly by securing post-mortem maintenance payments through a life insurance policy. *Bell v. Bell*, 162 Vt. 192, 200-01, 643 A.2d 846, 851 (1994) ("Vermont law does not . . . require life insurance to effect indirectly what [15 V.S.A.] § 752 does not mandate directly — the continuation of maintenance after the death of either party."). While the court has the discretion to order a spouse to maintain an existing life insurance policy for the benefit of the other spouse, *Quesnel v. Quesnel*, 150 Vt. 149, 152, 549 A.2d 644, 647 (1988), in this case the court ordered the husband to name the wife as the new beneficiary of an existing policy that had been assigned to the husband in the parties' court-approved stipulation. The parties' stipulation awards the husband all interest in his businesses, which includes the insurance policy. The policy is a "key man" policy that provides benefits to one of the husband's corporations upon his death. Under these circumstances, the court's order cannot stand.

The wife points out that the court's order merely secures the husband's maintenance obligation and would not require the husband's estate to continue paying maintenance after the husband's death. Further, according to the wife, the order does not disturb the parties' stipulation because the wife will not receive anything unless the husband dies first. The fact remains that the family court's order seeks to secure payment of post-mortem maintenance, to which the wife is not entitled. See *Kurz v. Kurz*, 443 N.W.2d 782, 788 (Mich. Ct. App. 1989) (at moment insurance proceeds become payable, recipient spouse was no longer entitled to very award insurance policy was meant to secure). Furthermore, the order allows proceeds from the husband's policy to go to the wife rather than the husband's chosen

beneficiaries even though the policy had been awarded to the husband in the parties' court-approved stipulation.

■ Here, as in the cases cited above, the family court is without authority to award post-mortem maintenance, either directly or indirectly. We are not persuaded that *Quesnel* requires a different result. In that case, we held that § 762 authorizes the court in a divorce case to order an insured spouse to maintain an existing life insurance policy for the benefit of the other spouse. *Quesnel*, 150 Vt. at 152, 549 A.2d at 647. We did not hold that trial courts could do what the court did here — order one spouse to maintain a life insurance policy for the benefit of the other spouse to assure continued maintenance payments following the death of the obligor spouse. To the extent *Quesnel* may be so interpreted, it is overruled as contrary to the case law cited above. Our holding does not violate § 762, which merely authorizes the trial court to "assign insurance benefits to a spouse or children." Finally, though we strike the offending provision, we need not remand the case for reconsideration of the maintenance award. *Clapp*, 163 Vt. at 25, 653 A.2d at 78.

*The family court's July 28, 1993 order is affirmed, except that paragraphs five and six are stricken and paragraph three is amended by striking the words beginning with "of" in line two through "made" in line six.*

**Morse, J.,** dissenting. I respectfully dissent from the reversal of the lump-sum payment in the event the husband predeceases the wife.

No matter how the family court labeled the conditional distribution of life insurance proceeds, it believed an equitable distribution of the marital estate required that provision. The critical point is not the label attached, but whether the policy was marital property. It was, and, the parties' stipulation notwithstanding, the court was authorized to assign the benefits of the policy. *Lewis v. Lewis*, 149 Vt. 19, 22, 538 A.2d 170, 172 (1987) (court not bound by stipulation); see 15 V.S.A. § 751 (property owned by either or both of parties is subject to equitable division).

I gather the Court recognizes that *Quesnel v. Quesnel*, 150 Vt. 149, 549 A.2d 644 (1988), is overruled, because that case involved the assignment of life insurance benefits to protect a wife from losing maintenance should her husband predecease her.*

---

* In *Quesnel*, wife was *not* the beneficiary, and the trial court ordered husband to name wife as the beneficiary instead. The trial court in *Quesnel* stated:

582

The Court has also overruled a statute, 15 V.S.A. § 762 (insurance benefits may be assigned to spouse), in cases where the purpose is to replace maintenance. The statute makes no such distinction. The purpose of § 762 is to accomplish what the trial court did here. The Court says that § 762 "merely authorizes the trial court to 'assign insurance benefits to a spouse,'" 164 Vt. at 581, 674 A.2d at 791, which is, of course, what the family court did. The legislative history of § 762 is as simple and straight-forward as the statute itself. House Judiciary Committee Chairman Hoyt spoke about the purpose of the section by saying, "[Section 762] is reasonable. [An] insurance policy is another asset, like real property, and the court ought to be able to say what happens to it." House Judiciary Committee, January 21, 1981, at 35.

The equitable balance of the family court's distribution of property has been upset by the Court's reversal. In such a case, we ordinarily remand so that the trial court may reconsider the financial balance it set out to accomplish between the parties. See *Semprebon v. Semprebon*, 157 Vt. 209, 216, 596 A.2d 361, 365 (1991) (property and maintenance awards interrelated — where court is to reconsider maintenance on remand, property award also reopened for reconsideration); *Cleverly v. Cleverly*, 151 Vt. 351, 357, 561 A.2d 99, 103 (1989) (any change in property settlement necessitates reexamination of maintenance).

---

Defendant [husband] shall name the plaintiff [wife] primary beneficiary of the life insurance policy until defendant's obligation to pay separate maintenance shall cease . . . . If the defendant predeceases the plaintiff, at which time the defendant's obligation to pay separate maintenance has not yet ceased . . . then at that time the plaintiff shall place the proceeds of defendant's life insurance policy in trust with a qualified banking institution to pay separate maintenance to the plaintiff . . . .

*Quesnel v. Quesnel*, No. S167-85 Wnd, slip op. at 6 (Washington Superior Court, Nov. 19, 1985).