*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-319

APRIL TERM, 2015

| | | |
|---|---|---|
| May Chiles (May Mantell) | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Addison Unit, |
| v. | } | Family Division |
| | } | |
| | } | |
| John Vaughan Chiles | } | DOCKET NO. 234-12-12 Andm |

Trial Judge: Linda Levitt

In the above-entitled cause, the Clerk will enter:

Husband appeals a final divorce order, arguing primarily that the family division of the superior court abused its discretion in awarding wife maintenance. We affirm.

The basic facts surrounding the history of the marriage are not in dispute. Wife, forty-four years old and in good health at the time of the final divorce order, has a master's degree in Fine Arts from Stanford University and was working as a graphic designer in Palo Alto, California for $45,000 per year when in 1999 she moved to Vermont to live with husband. Husband, fifty-two years old and in good health at the time of the final divorce order, cofounded a business in the late 1990s fabricating and selling glass heating and blowing equipment. Wife came into the marriage with few assets and significant debt. By the time the parties married in 2006, the same year their child was born, husband had bought out his partners and became the sole owner of the business. Since coming to Vermont, wife has worked a series of part-time jobs, including freelance graphic design and photography, waitressing, and teaching at a local college. The family court found that her monthly income at the time of the final divorce hearing was $1473 not including husband's temporary monthly payments of $843. The court found that husband had reported a monthly net income of $5100 not including health insurance premiums paid by his business.

The parties separated for good in December 2012. They agreed to share physical and legal parental rights and responsibilities, and thus the only issues at the final divorce hearing were: (1) how to distribute the marital property; and (2) what, if any, maintenance should be awarded to wife. Following an evidentiary hearing that lasted just over one day, the family court issued a decision that: (1) awarded husband approximately ninety percent of the marital assets totaling a little over $200,000 when factoring in debts; and (2) required husband to pay wife monthly maintenance in the amount of $1000 per month for five years. Husband appeals, arguing that the court abused its discretion in making the maintenance award, erred in ruling on an issue that it had indicated it would not rule on, made certain erroneous findings, and omitted certain findings. Regarding his first and primary claim of error, husband contends that the family court erred by awarding maintenance without finding that plaintiff was unable to support

herself through appropriate employment, and by not providing any reasonable basis for the amount and duration of the award.

The family court may order rehabilitative or permanent maintenance if it finds that the spouse seeking an award lacks sufficient income and property to provide for his or her reasonable needs and "is unable to support himself or herself through appropriate employment at the standard of living established during the civil marriage." 15 V.S.A. § 752(a)(2). The court must enter a maintenance award in an amount and for a duration that it deems just considering all relevant factors, including: (1) the financial resources of the party seeking maintenance and that party's ability to meet his or her needs independently; (2) the time and expense necessary for that party to acquire sufficient education or training to find appropriate employment; (3) the standard of living established during the marriage; (4) the duration of the marriage; (5) the age and health of each party; and (6) the ability of the party from whom maintenance is sought to meet his or her reasonable needs while meeting those of the party seeking maintenance. Id. § 752(b). "The reference to reasonable needs should not be looked at in relation to subsistence." Strauss v. Strauss, 160 Vt. 335, 338 (1993). As evident from its plain language, the focus of § 752 is "on the parties' financial resources, needs, and their relative abilities to become or remain self-supporting following divorce." Jenike v. Jenike, 2004 VT 83, ¶ 9, 177 Vt. 502 (mem.). In general, the purpose of maintenance is "to correct the vast inequality of income resulting from the divorce and to equalize the standard of living of the parties for an appropriate period of time." Strauss, 160 Vt. at 338 (citation omitted). "The purpose of rehabilitative maintenance is to assist the recipient-spouse in becoming self-supporting." Id. at 339. The family court "retains broad discretion in fashioning both the amount and duration of a maintenance award," Downs v. Downs, 159 Vt. 467, 469 (1993), and thus we will not disturb a maintenance award unless the appealing party demonstrates that "there is no reasonable basis to support [it]." Quesnel v. Quesnel, 150 Vt. 149, 151 (1988), overruled on other grounds by Theise v. Theise, 164 Vt. 577 (1996).

Husband first contends that the family court erred in awarding maintenance without finding that plaintiff was unable to support herself through appropriate employment. We disagree. To be sure, the family court found that wife had not applied for a series of well-paying jobs that were available to her, and that she could easily increase her monthly earnings, particularly after the parties' child started school. The court also found, however, that before coming to Vermont to live with husband, wife was earning $45,000 per year working as a graphic designer in the Bay Area of California, but "was unable to earn that amount in Vermont." This finding is consistent with wife's testimony that opportunities for graphic design work in Addison County, Vermont versus the Bay Area were "[n]ight and day." The court may award maintenance to a spouse who lacks income or property to meet his or her reasonable needs and is unable to support himself or herself through appropriate employment at the standard of living established during the marriage. Mother's property award is extremely minimal factoring in her debt. It is clear that the court factored wife's lack of effort to maximize her income into the decision to award husband ninety percent of the marital property. In essence, he argues that wife's lack of sufficient effort to achieve full-time employment at the salary she earned in California should result in both a denial of maintenance and a distribution of property heavily weighted in his favor.

The court found that wife's monthly income was $1473 not including temporary monthly payments from husband. Wife's trial exhibit indicates monthly earnings of $1716 from self-employment and two outside jobs. The court found wife's monthly expenses to be $4000. Even

2

taking into account the $1716 figure, the court's $1000 in monthly maintenance will still require wife to earn another $1300 per month, for a total income of $36,000 per year, just to meet her living expenses, let alone reach the standard of living attained in a marriage with a husband who earned at least $60,000 per year. In short, the court did not err in awarding maintenance in this case under the applicable statutory criteria.

Nor did the court abuse its discretion in the amount or duration of the award. As noted, the relatively modest $1000 monthly award still requires wife to earn $36,000 per year just to meet her expenses. The court found that wife was capable of earning more, and in fact the court's award will still require her to earn significantly more to meet her expenses. As for the duration of the award, the parties were married for eight years but separated a year and a half before the divorce decree was issued. Although the marriage was relatively short and there were separation periods during the marriage, the parties cohabitated for several years before the marriage after wife left her job in California to join husband in Vermont. See Wall v. Moore, 167 Vt. 580, 580-81 (1997) (mem.) (concluding that it is appropriate to consider entire length of cohabitation, not just period of marriage, when equitable) Wife ran a business for years in Vermont, sometimes at a loss, but she reported earning nearly $13,000 in income from the business in 2012 and testified that she believed she could be self-sufficient within five years. Given all of the circumstances, including the length of time that the parties were together, the parties' respective financial resources, and the fact that wife was beginning to make a profit with her business, the court acted well within its discretion in establishing a five-year maintenance period from the time of the final divorce order. See Johnson v. Johnson, 155 Vt. 36, 42 (1990) (recognizing difficulty of predicting when spouse would be self-supporting and noting that disadvantaged party can seek modification if maintenance period proves too short or too long).

Next, husband argues that the family court deprived him of due process by indicating at the final hearing that it would not decide how the parties should use the child dependency tax deduction but then ultimately ordering the parties to alternate the deduction annually. Husband's argument is that a constitutional violation occurred because he was unable to argue against the alternation decision. Assuming husband's argument would demonstrate a constitutional violation if he had no opportunity to state his position on allocation of the deduction, we note that husband's attorney was able to articulate husband's position at the final hearing, stating that wife had not yet demonstrated an ability to earn enough to take advantage of the deduction and thus the court should not have the parties share the deduction until wife reached a certain level of income. The court's preliminary indication that it would not rule on the issue did not preclude it from doing so upon further consideration. Given the fact that husband made his position clear, we cannot conclude that the factual predicate for his argument was present.

Finally, husband challenges three of the court's findings, as well as the court's failure to make other findings. First, husband argues that the court erroneously found that he earned $5100 per month plus the cost of his medical insurance, which was paid for by his business. Husband contends that this finding is clearly erroneous because, although his business pays his health insurance premium, that payment is added as income on his tax return. The court's finding is not clearly erroneous insofar as husband's accountant testified that in the most recent year the business included the premium payments as wages but "in prior years they were not included as wages." Moreover, husband's own testimony indicated that the health insurance payments were not factored into his calculation of $5094 in monthly income. See Chickanosky v. Chickanosky, 2011 VT 110, ¶ 14, 190 Vt. 435 ("We will . . . uphold the [family] court's findings of fact unless they are clearly erroneous, viewing them in the light most favorable to the prevailing party below

3

and excluding the effect of modifying evidence. The findings will stand if any reasonable and credible evidence supports them." (citation omitted)).

Husband also challenges the court's finding that he was physically abusive to wife. This finding is supported by wife's testimony that husband physically abused her. In any event, there is no indication that the family court factored physical abuse into its maintenance decision.

Next, husband contends that the court erroneously found that wife was unable to earn $45,000 a year in Vermont. In support of this argument, husband argues that when wife first moved from California she had a job opportunity in Rutland, Vermont for $50,000 per year. Wife testified that she was offered a job in Rutland at $50,000 but that when it was time to start the job she was told that it was not something that they could afford to offer her. As noted, wife testified that the opportunities for graphic design in the Bay Area and Addison County, Vermont were "[n]ight and day." The court's finding that wife could not earn in Vermont what she earned in the Bay Area is not clearly erroneous.

Finally, husband argues that the court erred by not listing as an asset a $3300 retirement account held by wife and by not making findings on the parties' standard of living during the marriage. The court did list as a martial asset wife's $3300 retirement account. Regarding the parties' standard of living during the marriage, the court made findings on each party's earnings and expenses, which were a good indication of their standard of living.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
John A. Dooley, Associate Justice


_____
Harold E. Eaton, Jr., Associate Justice

4