## SBC Enterprises, Inc. v. City of South Burlington Liquor Control Commission

## City of South Burlington v. SBC Enterprises, Inc.

[689 A.2d 427]

Nos. 95-532 & 95-565

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed December 13, 1996

*Karen Rush Shingler,* Burlington, for Plaintiff-Appellant (95-532), Defendant-Appellant (95-565).

*Steven F. Stitzel* and *Joseph S. McLean* of *Stitzel & Page, P.C.,* Burlington, for Defendant-Appellee (95-532), Plaintiff-Appellee (95-565).

**Gibson, J.** SBC Enterprises, Inc. appeals from a superior court order that declared valid an ordinance of the City of South Burlington requiring a license to provide live entertainment, and that enjoined SBC from providing live dance performances at Club Fantasy until it obtains a license. SBC also appeals from an order of the City's Liquor Control Commission that suspended SBC's liquor license for violating the City's entertainment and public-indecency ordinances. SBC argues that the City Council lacked authority to enact the entertainment ordinance, and that the Liquor Control Commission lacked authority to suspend a liquor license for violations of laws unrelated to the sale of alcoholic beverages. We affirm the judgment of the superior court, but reverse the order of the Liquor Control Commission because it exceeded the scope of its statutory grant of authority.

SBC operates a nightclub in South Burlington called Club Fantasy. On May 22, 1995, the Liquor Control Commission granted SBC a liquor license subject to certain conditions. Condition IV stated, "Licensee shall, at all times, comply with all applicable federal and state laws and ordinances of the City of South Burlington, including without limitation, the City's Zoning Ordinance and the Public Indecency Ordinance." The license further provided that any violation of the conditions shall constitute sufficient grounds for revocation of the license.

On June 5, the South Burlington City Council adopted an amendment of the South Burlington Ordinance, requiring a license to offer live entertainment, and on June 19, the City Council approved an annual entertainment license for SBC to offer "[r]ecorded and live music, patron dancing, stand-up comedy, television, [and] video arcade games." Club Fantasy opened on July 28 and offered performances by live dancers. Between July 29 and September 10, City police officers issued forty-nine citations to SBC, Shawn Cliche, the president of SBC, individual employees and dancers. Forty-eight citations were for violations of the entertainment ordinance and one was for violating the public-indecency ordinance. On August 22, the

City filed a complaint in superior court seeking a declaration that the entertainment ordinance is valid, and a permanent injunction barring SBC from further violating the ordinance.

On September 1, the City notified SBC to appear at a September 18 public hearing before the Liquor Control Commission to consider suspension of SBC's liquor license for violating Condition IV of the license by failing to comply with the entertainment ordinance, the public-indecency ordinance and the zoning regulations of the City. At the hearing, SBC admitted violating the entertainment ordinance, but argued that the ordinance was invalid because the City Council did not have authority to enact it. SBC denied violating the public-indecency ordinance and denied receiving notice of the zoning violation. The Liquor Control Commission issued its decision on September 25, concluding that the entertainment ordinance was valid and that SBC had violated both the entertainment and public-indecency ordinances. It did not rely on the zoning violation due to the alleged lack of notice. The Commission suspended SBC's liquor license for forty-five days to begin October 13, 1995.

On September 29, the superior court ruled that the City's entertainment ordinance is valid and granted a permanent injunction barring SBC from further violations. Subsequently, the City Council granted SBC an entertainment license for live dancers, and SBC requested that the Commission stay the liquor-license suspension. The Commission denied the request on October 13, and SBC renewed its request before this Court, which granted the stay on October 20.

## I.

SBC argues that the superior court erred by declaring the entertainment ordinance valid because the City Council lacked authority under 24 V.S.A. § 2291(11) to enact the ordinance. "[A] municipality has only those powers and functions expressly granted to it by the [L]egislature, such additional functions as may be incident, subordinate or necessary to the exercise thereof, and such powers as are essential to the declared objects and purposes of the municipality." *Robes v. Town of Hartford*, 161 Vt. 187, 190, 636 A.2d 342, 345 (1993). Section 12 of the entertainment ordinance states that the ordinance is enacted by the City Council under the authority granted by 24 V.S.A. § 2291 and by the South Burlington City Charter. The superior court held that the entertainment ordinance was authorized by both § 2291(11) and the City Charter § 104(g).

■ Section 104(g) of the City Charter authorizes the City "to adopt and enforce ordinances for the purpose of regulations and licensing . . . places o[f] public resort or public amusement whether indoor or outdoor; places dispensing food and drink to the public, such as restaurants, bars or inns." SBC does not contest the court's application or interpretation of the charter provision. Accordingly, we hold that the City Charter authorized the City to enact the entertainment ordinance, and we need not decide whether 24 V.S.A. § 2291(11) also authorizes the ordinance.*

## II.

■ SBC argues that the Liquor Control Commission exceeded its authority by suspending SBC's liquor license for activities beyond the scope of the liquor-control enabling legislation. SBC did not raise this argument before the Commission, and ordinarily it would not be preserved for review. *In re Denio*, 158 Vt. 230, 234, 608 A.2d 1166, 1168 (1992). The question of an agency's authority, however, is one of jurisdiction, see *Verrill v. Dewey*, 130 Vt. 627, 632, 299 A.2d 182, 185 (1972) (authority of public official to act is synonymous with jurisdiction of court), which may be raised for the first time on appeal. *Town of Charlotte v. Richmond*, 158 Vt. 354, 358, 609 A.2d 638, 640 (1992).

■ The State Liquor Control Board has only those powers expressly granted by the Legislature and those incidental powers as are necessarily implied for the full exercise of the legislative grant. *In re Club 107*, 152 Vt. 320, 323, 566 A.2d 966, 967 (1989). Under the legislative scheme, the Board is the paramount authority, and the local liquor control commissions are constituted as subordinate agencies. *Verrill v. Daley*, 126 Vt. 444, 446, 236 A.2d 238, 239-40 (1967). The duties of the State Board are set forth by 7 V.S.A. § 104, which authorizes the Board to "[s]ee that the laws relating to intoxicating liquor and to the manufacture, sale, transportation, barter, furnishing, importation, exportation, delivery, prescription and possession of malt and vinous beverages, spirituous liquors and alcohol by licensees and others are enforced." 7 V.S.A. § 104(1). The

---

*SBC also argues that the entertainment ordinance is unconstitutional as a bill of attainder, see U.S. Const. art. I, § 10, because the City enacted it only after Cliche had asserted his intent to present live dance performances at Club Fantasy. This issue was not raised before the trial court and thus is not properly before us. *Hall v. Department of Social Welfare*, 153 Vt. 479, 487, 572 A.2d 1342, 1347 (1990) (Court may decline to consider issues not raised before trial court, including those with constitutional dimensions).

Board also has the authority to promulgate related rules and issue permits "under such terms and conditions as it may impose." 7 V.S.A. § 104(8). Under 7 V.S.A. § 167, "[t]he local control commissioners shall administer such rules and regulations, which shall be furnished them by the liquor control board, as shall be necessary to carry out the purposes of this title." The purpose of Title 7 "is for the protection of the public welfare, good order, health, peace, safety and morals of the people of the state," 7 V.S.A. § 1, by "regulating the sale of intoxicants and encouraging temperance." *In re Club 107*, 152 Vt. at 326, 566 A.2d at 969.

SBC contends that the issue in this case is identical to the issue in *Club 107*, in which we stated that "the Board may not, through the promulgation of regulations, expand its authority into areas of activity that are beyond the focus of Title 7." *Id.* In *Club 107*, we held that the Board exceeded its authority by promulgating a regulation prohibiting obscene, lewd and indecent entertainment on licensed premises. *Id.* "[T]he mere coincidence of the sale of liquor and some other activity is not — by itself — sufficient to allow the Board to regulate the other activity." *Id.* at 324, 566 A.2d at 968. The Board was improperly "attempting generally to regulate public morals under the guise of a liquor regulation." *Id.* The City of South Burlington maintains that *Club 107* is inapposite because the local commissioners here have not defined a standard of conduct but rather simply required the licensee to comply with standards established by those who have authority to define unlawful conduct.

■ We agree with SBC that the Commission acted beyond the scope of Title 7 by suspending SBC's liquor license for violations of Condition IV, requiring compliance "with all applicable federal and state laws and ordinances of the City of South Burlington, including without limitation, the City's Zoning Ordinance and the Public Indecency Ordinance." There is no express or implied grant of authority by the Legislature permitting the Commission to enforce federal, state and municipal laws generally. The Commission is authorized only to administer the rules and regulations promulgated by the Board necessary to carry out the purposes of Title 7, and the Board is authorized only to "[s]ee that the laws relating to intoxicating liquor . . . are enforced." 7 V.S.A. § 104(1). As in *Club 107*, there is insufficient connection between liquor regulation and enforcement of the entertainment and public-indecency ordinances to bring ordinance enforcement within the Commission's authority. See *In re Club 107*, 152 Vt. at 324, 566 A.2d at 968.

■ Where the Legislature has intended licensing agencies to aid in the enforcement of unrelated laws, it has specifically authorized such activity. For example, the Legislature has authorized suspension of a license to conduct a trade or business for noncompliance with an order to pay a maintenance or child support obligation, see 15 V.S.A. §§ 795 and 798(a), and for failure to pay state taxes, see 32 V.S.A. § 3113(f). It has also authorized suspension of a motor vehicle license for noncompliance with a maintenance or child support order. See 15 V.S.A. § 798(b). There is, however, no statute authorizing licensing agencies generally or liquor control commissions in particular to suspend a liquor license for failure to comply with municipal ordinances unrelated to intoxicating liquor. The Commission here acted beyond the scope of its enabling legislation.

We do not mean to condone SBC's determination to ignore the entertainment ordinance. We simply conclude that enforcement of civil ordinances is provided through other channels. See 23 V.S.A. § 2301 (establishing traffic and municipal ordinance bureau with exclusive jurisdiction for enforcement of civil ordinance violations). Local liquor control commissioners are not empowered to adjudicate alleged violations of municipal ordinances that are not within their legislative grant of authority. Accordingly, the Liquor Control Commission was without jurisdiction to suspend SBC's liquor license for violating the entertainment and public-indecency ordinances.

*The judgment of the superior court is affirmed; the order of the South Burlington Liquor Control Commission suspending SBC's liquor license is vacated, and the cause remanded.*

