2006 VT 122

### In re Peter and Carla OCHS (George and Carole Trickett, Appellants)

[915 A.2d 780]

No. 05-385

¶ 1. November 27, 2006. George and Carole Trickett appeal from a decision of the Vermont Environmental Board that their neighbors' apple growing operation, Crescent Orchards, was a farm and thus exempt from Act 250 review. The Tricketts claim that the apple production company operated by their neighbors, Peter and Carla Ochs, is a commercial enterprise, with attendant off-site production involvement, and it does not qualify for the farming exemption. We affirm.

¶ 2. This Court has experience with the facts in this dispute. We held in *Trickett v. Ochs* that Vermont's right-to-farm law did not apply in the circumstances of the case. 2003 VT 91, ¶ 1, 176 Vt. 89, 838 A.2d 66. Now, we must examine whether Act 250 applies to the Ochses' farming activities. The matter began with a Jurisdictional Opinion (JO) which asserted Act 250 jurisdiction over the Ochses' apple orchard and apple packing and distribution facility on 300 acres of land in Orwell, Vermont. George and Carole Trickett live directly across the road from the Ochses' apple packing facility. The Tricketts complained about the operations at Crescent Orchards: the noise, the fumes, and the interference with the Tricketts' use of the road. The Environmental Commission Coordinator issued a JO finding that Crescent Orchards was subject to Act 250 review because the Ochses imported apples from lands leased from others. He found that such activities were more like a commercial processing, distribution, and warehouse plant than a farm. Therefore, the coordinator decided, the facility did not meet

the farming exemption. See 10 V.S.A. § 6001(22) (exempting certain agricultural activities from Act 250 permitting process).

¶ 3. The Ochses filed a Petition for Declaratory Ruling with the Environmental Board appealing the JO. *Id.* § 6007(c). They contended that their apple growing operation met the farming exemption, and therefore, it did not require an Act 250 permit. The Board admitted the Tricketts as parties, explaining that persons directly affected by a project are proper parties in declaratory rulings. See Env. Bd. R. 14(A)(5). The Board reversed the JO. The Environmental Board determined that the Ochses' farm is exempt from Act 250 jurisdiction. The Tricketts appealed.

¶ 4. The facts are not in dispute. Peter and Carla Ochs own approximately 300 acres of land in Orwell, Vermont. Under the name "Crescent Orchards," the Ochses operate an apple orchard on about 150 acres of their 300-acre parcel. Over the years, there have been various changes to the facilities at Crescent Orchards. The Ochses have built a packing house, a loading dock, and a mechanical line upon which the apples are moved and loaded into trucks for transport. They have partly constructed a cold storage unit. In these facilities, Crescent Orchards' employees store, wash, wax, wrap, and pack apples to ship, market and sell. Since 1996, all of the apples picked at Crescent Orchards have been packed at their Crescent Orchards packing plant.

¶ 5. The Ochses and their employees do all of the orchard work and packing at Crescent Orchards. They use tractor-trailers equipped with refrigeration units to store their apples for future shipment to market throughout the year. Independent truckers transport many of the apples off the Crescent Orchards site.

¶ 6. Before 1998, the Ochses harvested apples only from their Crescent Orchards lands. Beginning in 1998, in order to obtain other varieties of apples (Empires and Paula Reds), and to have some insurance against the vagaries of weather and growing conditions, the Ochses started leasing apple orchards from other landowners. Since 1998, the only apples that the Ochses have processed, stored or packed at Crescent Orchards have come from Crescent Orchards lands or from the orchards that they have cultivated on lands that they have leased.

¶ 7. Most of the leases that the Ochses have entered into with the landowners of other orchards are year-to-year leases.[1] Under the terms of these lease agreements, the Ochses do all of the work on the lands at the orchards which they lease, including mouse baiting, pruning, spraying and preparing the apple trees in the spring, and picking the apples in the fall. During the lease period, neither lessors nor anyone, other than the Ochses and their employees, work on the leased orchards lands. The Ochses use their own machinery when working on the leased orchard lands. They make all the day-to-day decisions concerning the cultivation of the apples at the leased orchards. The lessors have no control over the conduct of the Ochses' operations except for decisions about which trees may be felled.

¶ 8. This Court's review of an Environmental Board ruling is limited. "We accord deference to the Environmental

---

[1] Many orchards and farms in Vermont lease or rent lands as part of their operations. About 42,500 acres of a total of 193,376 acres (about 20%) of farmland in Addison County is rented. Statewide figures are comparable; 233,596 acres of a total of 1,244,909 acres of Vermont's farmland is rented or leased.

Board's interpretations of Act 250, its own rules, and to the Board's specialized knowledge in the environmental field." *In re Nehemiah Assocs.*, 168 Vt. 288, 292, 719 A.2d 34, 36 (1998). "[T]he Board's decisions are presumed to be correct, valid, and reasonable," and absent compelling indications of error, the Court should sustain the Board's interpretation. *Id.*; *In re Eastland, Inc.*, 151 Vt. 497, 499, 562 A.2d 1043, 1044 (1989). In this case, the Environmental Board properly interpreted the definition of farming and the exemption to Act 250 jurisdiction of farming.

¶ 9. Act 250 requires that a land use permit be obtained prior to the commencement of construction on a development or prior to commencement of development. 10 V.S.A. § 6081(a). "Development" is defined in relevant part as "[t]he construction of improvements for commercial or industrial purposes" on more than one acre if the municipality has not adopted permanent zoning and subdivision bylaws, or on more than ten acres if the municipality where the construction occurs has adopted permanent zoning and subdivision bylaws. *Id.* § 6001(3)(A)(i), (ii).

¶ 10. There is no dispute that the relevant acreage at Crescent Orchards is greater than ten acres, and therefore, whether the town of Orwell has adopted zoning and subdivision bylaws makes no difference here. The Board also found that the construction of improvements for a commercial purpose had occurred. Because the operation meets the definition of a "development" under both 10 V.S.A. § 6001(3)(A)(i) and (ii), it is subject to the permitting requirements of Act 250, unless it is otherwise exempt. *Id.* § 6081(a).

¶ 11. Certain developments are exempt from Act 250, including "[t]he construction of improvements for farming ... purposes below the elevation of 2,500 feet." 10 V.S.A. § 6001(3)(D)(i). Crescent Orchards is located below the elevation of 2,500 feet. To qualify for the farming exemption, Crescent Orchards must meet the definition of "farming," defined in relevant part, as follows:

> (A) the cultivation or other use of land for growing food, fiber, Christmas trees, maple sap, or horticultural and orchard crops; or
>
> . . . .
>
> (E) the on-site storage, preparation and sale of agricultural products principally produced on the farm; . . . .

*Id.* § 6001(22)(A), (E).

¶ 12. The Ochses bear the burden of proving that the operation fits within the farming exemption. See *Our Lady of Ephesus House of Prayer, Inc. v. Town of Jamaica*, 2005 VT 16, ¶ 14, 178 Vt. 35, 869 A.2d 145 (stating in a property tax case that the party seeking the benefit of a statutory exemption bears both the burdens of production and persuasion). The farming exemption, like all exemptions, is to be read narrowly and only applied when the facts clearly support the exemption's application. See *Vt. Alliance of Nonprofit Orgs. v. City of Burlington*, 2004 VT 57, ¶ 10, 177 Vt. 47, 857 A.2d 305 (stating that exemptions from taxation must be construed narrowly).

¶ 13. The Board found that the cultivation of the apple trees at Crescent Orchards met the definition of farming and was clearly exempt pursuant to 10 V.S.A. § 6001(22)(A). We agree. The Board went on to evaluate whether storing, washing, waxing, wrapping, and packing apples for shipping, marketing and sale changed the equation and turned the operation into a commercial enterprise, rather than a farm, under § 6001(22)(E) ("the on-site storage, preparation and sale of agricul-

tural products principally produced on the farm"). The Tricketts contended that these activities went beyond the scope of the farming exception. The Board found that "the on-site storage, preparation and sale of agricultural products" encompassed storing, washing, waxing, wrapping, and packing apples. *Id.*

¶ 14. Next we turn, as did the Board, to the phrase "principally produced on the farm." *Id.* Here, the Tricketts contend that, since the Ochses lease several different orchards, the apples are not principally produced at Crescent Orchards. The provisions of the leases make it apparent that the Ochses control farming operations on the leased land. See *In re Eastland, Inc.*, 151 Vt. at 499-500, 526 A.2d at 1044-45 (defining control as "[t]o exercise restraining or directing influence over.") (internal quotations and citations omitted). They exercise sufficient control over the lands which they lease to bring those lands into their farm for purposes of 10 V.S.A. § 6001(22)(E). They make the day-to-day decisions concerning the apple cultivation at the leased orchards. Using their own machinery, they do all of the work on the lands and trees at the leased orchards; they prune and spray, and they pick the apples. Neither lessors nor any person other than the Ochses work on the leased orchards lands during the lease period. The lessors exercise no control over the Ochses' operations.

¶ 15. For purposes of an Act 250 analysis, the Board found that ownership of the land is less important than the use to which the land is put. See *Vt. Baptist Convention v. Burlington Zoning Bd.*, 159 Vt. 28, 30-31, 613 A.2d 710, 711 (1992) (holding that, for zoning purposes, the use to which real estate is put is more important than the ownership of the property). We agree. It is reasonable to construe the legislative intent behind the exemption to Act 250 to include lands leased by a farmer as part of that farmer's "farm" for purposes of satisfying 10 V.S.A. § 6001(22)(E), exemption for "the on-site storage, preparation and sale of agricultural products principally produced on the farm."

¶ 16. The Board went on to analyze whether apples processed at the orchard were "principally produced" from the Crescent Orchards' apple trees. *Id.* The Tricketts do not dispute that section of the Board's decision. Rather, they question "whether being partly a farm means everything it does is exempt, even when that looks and smells and sounds more like a commercial facility than a farm."[2]

¶ 17. The operations at Crescent Orchards, as established by the uncontested facts, may resemble a commercial warehouse, processing, and distribution center, but this is not a situation where other growers avoid Act 250 jurisdiction by utilizing a central processing and packaging center to prepare and sell their agricultural products. As long as the Ochses exercise sufficient control over

---

[2] The Tricketts' claim that the exemption violates the common benefits clause of the Vermont Constitution, Article 7, is inadequately briefed and was not raised below. As such we decline to address it. *In re Handy*, 171 Vt. 336, 359, 764 A.2d 1226, 1245 (2000) (Johnson, J., dissenting) (citing *SBC Enterprises, Inc. v. City of S. Burlington Liquor Control Comm'n*, 166 Vt. 79, 83 n.*, 689 A.2d 427, 429 n.* (1996), and *Quesnel v. Quesnel*, 150 Vt. 149, 150-51, 549 A.2d 644, 646 (1988) (refusing to address challenge to constitutionality of statute where argument was raised for first time on appeal and there was no showing of extraordinary circumstances suggesting that issue needed to be addressed), *overruled on other grounds by Theise v. Theise*, 164 Vt. 577, 674 A.2d 789 (1996)).

the leased lands, and as long as a lease is not simply a ruse to bring lands into "the farm" which are, in actuality, still under the control of the lessor or landowner, there is no justifiable basis for distinguishing between owned lands and leased lands in determining what constitutes "farming" for purposes of the exemption found in § 6001(22)(E). Operating a farm, whether it is a dairy farm, a beef ranch, or an apple orchard, is not and cannot be a pristine pastoral activity. Modern machinery and practices in every type of farming can be noisy. Farming is, by its nature, commercial. As the Board wrote: "A farm is still a farm — and exempt from Act 250 — whether it uses two or twenty trucks or tractors, or whether it has seven or 700,000 chickens." We agree. The project at Crescent Orchards qualifies as "farming," as defined in 10 V.S.A. § 6001(22), and it is exempt from Act 250 review.

*Affirmed.*